**Gail Y. FARO, Appellant,**

v.

**Robert J. FARO, Appellee.**

**No. 3465.**

Supreme Court of Alaska.

June 23, 1978.

---

James H. Ottinger, M. Ashley Dickerson, Anchorage, for appellant.

Timothy H. Stearns, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BURKE, Justice.

This appeal arises from the custody and support provisions of a divorce decree. Appellant Gail Faro contends that the trial court abused its discretion by awarding custody of the parties' four minor children to appellee, Robert Faro. Appellant also contests the "limited" visitation rights contained in the order, the provision that she contribute $50 per month per child for their support commencing June 1, 1978, and the denial to her of any alimony or support award.

■ It is well established that this court will disturb the trial court's resolution of custody issues only if the record shows an abuse of discretion or if controlling findings of fact are clearly erroneous. *Horutz v. Horutz*, 560 P.2d 397, 399 (Alaska 1977).[1]

■ In *Wetzler v. Wetzler*, 570 P.2d 741, 743 (Alaska 1977), we recently reiterated the standard to be applied in making custody determinations, namely, that the best interests of the child or children will control.[2] In her oral argument appellant suggested that *Wetzler* represents a return to the "tender years" doctrine.[3] That doctrine was specifically rejected in *Johnson v. Johnson*, 564 P.2d 71, 75 (Alaska 1977).[4] A careful reading of our opinion in *Wetzler* would have revealed to appellant that it in no way revived the "tender years" doctrine.

■■ We find no abuse of discretion in the custody determination in the instant case. The court found both appellant and appellee to be fit parents. The court's mar-

riage counsellor was unable to make a recommendation as to which parent should be granted custody. Another expert, a social worker for the State of Alaska, recommended that Mr. Faro be awarded custody of the children. She concluded that he was the more emotionally stable and financially secure of the parties. Given these factors and the great weight accorded to the trial judge's first-hand assessment of the parties,[5] we cannot agree with appellant's assertion that the custody award constituted an abuse of discretion.[6]

■ Our review of visitation privileges is based upon the same standard applied in other custody matters, that is, we need only determine whether the trial court abused its discretion in fashioning suitable visitation rights. *Curgus v. Curgus*, 514 P.2d 647, 649 (Alaska 1973). Citing AS 09.55.205 as it read prior to its amendment in 1977,[7] appellant asserts that the court erred by failing to award her visiting privileges

1. *See Horton v. Horton*, 519 P.2d 1131, 1132 (Alaska 1974); *Carle v. Carle*, 503 P.2d 1050, 1052 (Alaska 1972).

2. AS 09.55.205.

3. Under the "tender years" doctrine, other factors being equal, a mother will be given preference for custody. *Wetzler, supra* at 742; *Johnson v. Johnson*, 564 P.2d 71, 73–74 (Alaska 1977); *King v. King*, 477 P.2d 356, 357 (Alaska 1970).

4. In *Johnson* we concluded that determination of the child's best interest must turn on a balancing of the unique facts of each case rather than upon outmoded presumptions.

5. *Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970).

6. Similarly, we are unpersuaded by appellant's contention that the trial court placed undue emphasis upon Mrs. Faro's demeanor at trial and upon the fact that the eldest son suffers from Duchenne's muscular dystrophy. Appellant suggests that the facts in the instant case are comparable to those in *Horton v. Horton*, 519 P.2d 1131 (Alaska 1974), in which we concluded that the trial court abused its discretion in finding that the child's need for a "father figure" outweighed the father's history of participating in and encouraging incestuous relations among his children. The facts here support the trial judge's determination as to what is in the best interests of the children, and do

not suggest the sort of bias found in *Horton*. In addition these facts bear no resemblance to the situation in *Horton* in which the trial court's custody award was potentially detrimental to the children.

7. The order in this case was entered on May 5, 1977, before the effective date of the amendments. Prior to the 1977 amendments, AS 09.-55.205 contained the following provisions:

> *Judgments for custody.* In an action for divorce or for legal separation the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any child of the marriage, make an order for the custody of or visitation with the minor child which may seem necessary or proper and may at any time modify or vacate the order. In awarding custody the court is to be guided by the following considerations:
>
> (1) by what appears to be for the best interests of the child and if the child is of a sufficient age and intelligence to form a preference, the court may consider that preference in determining the question;
>
> (2) as between parents adversely claiming the custody neither parent is entitled to it as of right.

AS 09.55.205, as amended, contains the same "necessary or proper" language so the outcome in this case as to visitation would be identical under the statute as amended.

which are "necessary or proper" as directed by the statute. We believe that the record supports the court's allocation of visiting rights.[8] To the extent that the visitation schedule is limited, such limitation appears to be warranted by the demonstrated bitterness between the parties, which has resulted in violent confrontations. Because of the deleterious effects such outbursts might have on the children, the trial court was justified in limiting the visitation schedule as it did. If and when it can be shown that the bitterness between the parties has dissipated, the visitation privileges can always be liberalized to allow Mrs. Faro to visit the children more frequently.

 Appellant next contends that the trial court abused its discretion by ordering her to pay $50 per month per child for child support beginning June 1, 1978. As stated in *Houger v. Houger*, 449 P.2d 766, 771 (Alaska 1969), "[W]e shall not find an abuse of discretion unless we are left with the definite and firm conviction on the whole record that the judge made a mistake in awarding the child support he did."[9] In the instant case we are convinced that the order as to child support constituted an abuse of discretion. At the time of the order Mrs. Faro was unemployed. Though she was optimistic about her opportunities for obtaining work as a musician, she had not worked as a musician for approximately 10 years and had no definite offers of employment at the time of the trial. Furthermore Mr. Faro testified that he did not feel he needed child support.

In ordering Mrs. Faro to commence payments as of June 1, 1978, the trial court engaged in sheer speculation as to her ability to make such payments. If in fact Mrs. Faro at some time in the future is in a position to contribute to the support of the children, Mr. Faro can apply for a modification of the support arrangements. Our conclusion that the court abused its discretion in no way is meant to suggest that Mrs.

Faro, as a non-custodial mother, could not be required to contribute to her children's support if it could be shown that she was financially able to do so. However, as of the date of the order, nothing in the record suggests that Mrs. Faro could or would be able in the near future to make such payments.

 Finally, Mrs. Faro challenges the court's refusal to award her alimony or support. The trial court is vested with broad discretion in making alimony determinations. Where there is no clear abuse of that discretion this court will not interfere. *Schoning v. Schoning*, 550 P.2d 373, 374 (Alaska 1976). In *Schoning* we set forth the following factors which the trial court is to consider in determining alimony and division of property:

> the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

550 P.2d at 374 (citing *Merrill v. Merrill*, 368 P.2d 546, 547–48 n. 4 (Alaska 1962)).

 Mr. Faro is employed by the Army and earns $875 per month in addition to military benefits. He lives on the military base and receives free government housing in lieu of a $500 per month housing allowance. Although presumably this amount has been sufficient to make ends meet, the trial judge's order that Mrs. Faro pay child support payments suggests that he believed $875 per month was something less than enough to make ends meet. In any event it seems clear that there are no excess funds out of which support payments could be made. The parties had debts of approxi-

---

8. Mrs. Faro was accorded visiting rights every other weekend, from Friday at 6:00 p. m. until Sunday at 6:00 p. m., two weeks during the summer, and limited rights at Christmas and on the children's birthdays.

9. We recently reiterated this standard in *Brenton v. Brenton*, 564 P.2d 1225 (Alaska 1977).

mately $4300 of which $2800 were assumed by Mr. Faro and $1500 by Mrs. Faro.[10] The parties own three parcels of land which the court ordered sold, the proceeds to be divided equally along with the other personal property of the parties. In light of Mr. Faro's minimal income, the fact that he will provide all of the support for the minor children, his assumption of more than half of the parties' debts, and the prospect of ready cash for Mrs. Faro following the sale of the property, we cannot agree with appellant that the trial court's denial of any support payments to her was an abuse of discretion.

Accordingly this case is AFFIRMED as to the provisions relating to custody, visitation privileges, and the denial of support payments to appellant. It is REVERSED as to the provision ordering appellant to pay child support.

AFFIRMED in part, REVERSED in part.

10. Mr. Faro assumed miscellaneous debts of the parties and Mrs. Faro assumed the debt outstanding on the organ which she required for her prospective work as a musician.