**Susan B. HUNT, Appellant,**

v.

**Ronald F. HUNT, Appellee.**

**No. S–399.**

Supreme Court of Alaska.

April 19, 1985.

---

**1.** *James v. State,* 671 P.2d 885, 891 (Alaska App. 1983).

**2.** *Id.* at 892.

Ardith Lynch, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellant.

Dennis E. Cook and Howard Staley, Schaible, Staley, DeLisio & Cook, Inc., Fairbanks, for appellee.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

### PER CURIAM.

This is an appeal from a post-divorce order dividing property and fixing support obligations. Susan Hunt appeals the valuation of Ronald Hunt's interest in a computer service business, the buyout terms ordered, the use of a cutoff date earlier than the parties' date of divorce, the denial of temporary rehabilitative spousal support and the amount of the child support award.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Susan B. Hunt and Ronald F. Hunt were married in Utah in 1967 and divorced in Fairbanks in 1983. Neither party brought property into the marriage, but they accumulated substantial amounts of property during the 16 year union. They have three children: Ron, Jr., age 16; Jennifer, age 10; and Mary, age 8.

The major asset of the marriage is a business, Data Management, Inc., in which Ronald owns a 49.5% interest. Its function consists of helping public and private clients utilize IBM computer equipment. The trial court valued the business at $132,-760 and awarded 30% of the business interest to Susan and 70% to Ronald. Ronald was ordered to pay Susan off in equal monthly installments for three years at 10.5% interest; Susan's interest was secured with a promissory note.

The parties disagree on the appropriate date at which to determine what property is subject to division. This problem affects the distribution of three assets: the 107 Seventh Avenue fourplex, its contents and Ronald's retirement fund.

The trial court refused to order Ronald to pay Susan temporary rehabilitative spousal support, and instead awarded her a greater share of the property.

The parties agreed that custody should be shared, with Ronald primary physical custodian of Ron, Jr. and Susan primary physical custodian of Jennifer and Mary. The trial court ordered Susan to pay Ronald $100 per month child support for Ron, Jr., and Ronald to pay Susan $350 per child per month.

### II. DISCUSSION

A. Did the Trial Court Err in Assigning a Value of $132,760 to Ronald's Interest in Data Management, Inc.?

 One spouse's interest in a close corporation, including the value of corporate goodwill, is property subject to division. *Rostel v. Rostel*, 622 P.2d 429, 430 (Alaska 1981). The problem is therefore fixing the value of Ronald's interest in Data Management. The trial court found that Ronald's interest has a fair market value of $132,-760, based on the testimony of Ronald's expert. We will not reverse the discretionary finding of the trial court unless it is clearly unjust. *Merrill v. Merrill*, 368 P.2d 546, 547 (Alaska 1962).

 Ronald's expert, William Kohler, a certified public accountant, based his valuation of Ronald's business interest on his intimate knowledge of the business, using a formula developed by the New Jersey Supreme Court in *Dugan v. Dugan*, 457 A.2d 1 (N.J.1983). *Dugan* involved valuation of goodwill in an attorney's exclusively owned professional corporation.[1]

---

**1.** The *Dugan* court used the following formula to determine the value of goodwill:

The court should first ascertain what an attorney of comparable experience, expertise, education and age would be earning as an employee in the same general locale. The effort that the practitioner expends on his law practice should not be overlooked when comparing this income to that of the hypothetical employee.... Next, the attorney's net income before federal and state income taxes for a period of years, preferably five, should be determined and averaged. The actual av-

erage should then be compared with the employee norm. If the attorney's actual average realistically exceeds the total of (1) the employee norm and (2) a return on the investment in the physical assets, the excess would be the basis for evaluating goodwill.

This excess is subject to a capitalization factor. The capitalization factor is generally perceived as the number of years of excess earnings a purchaser would be willing to pay for in advance in order to acquire the goodwill. 2 *J. Bonbright, Valuation of Property* 731

In contrast, Susan's expert, Paul C. Taylor, Associate Professor of Finance at the University of Alaska, used guidelines established by the Internal Revenue Service for determining the value of stock in a closely held corporation for estate tax purposes to conclude that the fair market value of the business interest was $766,000.[2]

The trial court specifically rejected Mr. Taylor's valuation and accepted that of Mr. Kohler. Since the trial court's finding was supported by Mr. Kohler's testimony, we are not left with a definite and firm conviction that a mistake was made. We therefore affirm the superior court's finding that Ronald's interest is worth $132,760.[3]

■ Susan also argues that Ronald should be required to make a lump sum buyout of her 30% interest in the business or give her a security interest to ensure his periodic payments. *See Jones v. Jones*, 666 P.2d 1031 (Alaska 1983). The form of a buyout is a determination based on all the facts, and we find no abuse of discretion in the 3-year payout period at 10.5% interest.

B. Did the Trial Court Err in Excluding Certain Property from the Property Settlement?

Ronald acquired three items of property between the parties' April 1983 separation and November 1983 divorce.[4] The trial court declined to divide this property, thus leaving it with Ronald. The appropriate property division is within the broad discretion of the trial court and will not be disturbed unless it is clearly unjust. *Bussell v. Bussell*, 623 P.2d 1221, 1222 (Alaska 1981); *Merrill v. Merrill*, 368 P.2d 546, 547 (Alaska 1962).

The legislature empowered courts to divide property of the parties acquired during coverture. AS 25.24.160(6). Susan argues that coverture ends with the final decree of divorce and all property acquired by either party before that time is subject to division. Ronald argues that the trial court has discretion to exclude property acquired after separation. Ronald in essence urges this court to apply the equitable divorce doctrine, whereby the cutoff date for determining what is marital property subject to division is the point at which the marriage is no longer viable. *See Bussell v. Bussell*, 623 P.2d 1221, 1223 (Alaska 1981).[5]

■ Property acquired after the permanent separation but prior to final divorce should be included in the property settlement if it was acquired with property which would otherwise have been subject to division. If the later-acquired property was purchased with property which would not have been divided, then the new property should remain with the purchasing spouse. *See Bussell*, 623 P.2d at 1223 n. 3.

■ The trial court found that Ronald had no equity in the 107 Seventh Avenue

---

(1937). The minimum capitalization factor is zero. The precise capitalization factor would depend on other evidence.
457 A.2d at 9–10. The court noted that in New York, three is the capitalization factor least in need of justification. *Id.* at 11.

**2.** Rev.Rul. 59–60, 1959–1 C.B. 237, § 4.01 sets forth the following factors:
 (a) The nature of the business and the history of the enterprise from its inception.
 (b) The economic outlook in general and the condition and outlook of the specific industry in particular.
 (c) The book value of the stock and the financial condition of the business.
 (d) The earning capacity of the company.
 (e) The dividend-paying capacity.
 (f) Whether or not the enterprise has goodwill or other intangible value.

 (g) Sales of the stock and the size of the block of stock to be valued.
 (h) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.
*Id.* at 238–239.

**3.** Our affirmance of the superior court's valuation ought not to be construed as a policy preference for the *Dugan* approach over the IRS guidelines.

**4.** Ronald observes that the court below apparently used June 30, 1983 as the cutoff date.

**5.** Ronald specifically argues that it is within the trial court's discretion to adopt a *reasonable* cutoff date.

fourplex. This finding is not supported by the evidence.

Ronald testified that the fourplex was appraised at $300,000 and the mortgage principal was $262,850. Therefore the total equity is $37,150; Ronald's 50% share is $18,575.

However, the down payment on the fourplex came from loans from Data Management to Ronald, after the parties separated. Since Susan is not liable on these notes, it was proper for the trial court to refuse to divide the fourplex, because Ronald is paying for it with property which would not be the subject of property division.

■ The next property at issue is personalty located in Ronald's residence. The trial court apparently found this property had no value. Ronald contends that even if the property does have value, it is not marital property subject to division.

The evidence indicated that the personalty in Ronald's home has a value of $7,383.00. Therefore, the trial court's finding that this property has no value is not supported by the evidence.

The record does not disclose whether Ronald bought this property with money which would have been subject to division had it not been used to furnish his apartment; absent any evidence that Ronald invaded property which should have been divided, we find no abuse of discretion in the trial court's omission of this property.

■ Finally, the trial court used the date of separation in valuing Ronald's retirement benefits at $17,275. The retirement plan contributions totaled $25,236 on December 31, 1983 and only $17,275 in April 1983. We find no abuse of discretion in the use of the April cutoff date.

### C. Did the Trial Court Err in Failing to Award Susan Temporary Rehabilitative Spousal Support?

A trial court has broad discretion in determining the necessity of spousal support and this court will not interfere unless there is clear injustice or abuse of discretion. *Malone v. Malone*, 587 P.2d 1167

(Alaska 1978); *Faro v. Faro*, 579 P.2d 1377 (Alaska 1978).

■ It is not an abuse of discretion to award temporary rehabilitative alimony when the award is of limited duration and for the specific purpose of allowing the supported spouse to improve his employment skills. *Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981). However, we have expressed a preference for providing for the parties' financial needs by property disposition rather than alimony awards. *Malone v. Malone*, 587 P.2d 1167, 1168 (Alaska 1978).

■ The court below used a property division in lieu of spousal support. Although it could have ordered alimony payments during Susan's education under *Bussell*, it was not an abuse of discretion to fail to do so.

### D. Did the Trial Court Err in Awarding Susan Only $350 per Child per Month Support Payments?

Pursuant to AS 25.24.160(2), the trial court ordered Ronald to pay Susan $350 per month per child support payments, and ordered Susan to pay Ronald $100 per month child support for Ron, Jr. The order of the trial court should be reversed only if this court has a definite and firm conviction based on the record as a whole that a mistake has been made or the trial court abused its discretion. *Faro v. Faro*, 579 P.2d 1377, 1380 (Alaska 1978); *Brenton v. Brenton*, 564 P.2d 1225 (Alaska 1977).

■ It is permissible to equitably allocate the burden of raising children. In the child support modification context we have required trial courts to examine the relative financial situations of the parties and the total cost of supporting the children. *Headlough v. Headlough*, 639 P.2d 1010, 1013–14 (Alaska 1982); *Curley v. Curley*, 588 P.2d 289, 292 (Alaska 1979). We see no reason why these principles should not extend to initial child support award determinations.

Susan claims no income, with expenses for herself and two children totaling $3,197 per month. Ronald shows a net monthly income of $6,225 with monthly expenses for himself and one child of $4,072. His

income exceeds his expenses by $2,153 per month, and his expenses, for himself and one child exceed those for his wife and two children by approximately $900 per month.

It is clear that Ronald could well afford substantially higher child support than is required of him, without requiring him to restrict his own lifestyle, while Susan will have to invade her equities substantially to maintain the children's accustomed standard of living. Even if she takes $20,000 a year out of her equities, or was earning $20,000 a year, that would still leave a significant balance to be made up by her over and above that which Ronald is required to pay. It is not to be forgotten that she is paying $100 a month for the support of their son, so the net effect is that she receives child support in the amount of $600 per month, not $700.

We therefore conclude that the child support award was inadequate and remand this issue to the trial court. Upon reconsideration the trial court should specifically identify the reasonable needs of the two children, considering the station in life to which they are accustomed and the ability of the parents to meet those needs.

The decision of the superior court is AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.