Charles LONE WOLF, Appellant,

v.

Carol LONE WOLF, Appellee.

No. S-1707.

Supreme Court of Alaska.

Sept. 4, 1987.

Barbara L. Malchick, Asst. Public Advocate, Brant McGee, Public Advocate, Office of Public Advocacy, Anchorage, for appellant.

Dale O. Curda, Angstman Law Office, Inc., Bethel, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This appeal arises from the custody and support provisions of a divorce decree. Appellant, Charles Lone Wolf, contends that the trial court abused its discretion by (1) awarding sole custody of the parties' two children to Appellee, Carol Lone Wolf; (2) granting him only weekend visitation rights; (3) ordering him to pay $400 per month in child support; and (4) awarding Carol reasonable attorney's fees. Charles also contends that the trial court erred by refusing to change the last name of one of the children. We affirm the trial court's custody, child support and name change determinations. We reverse its visitation determination and attorney's fees award.

I

The Lone Wolfs were married on April 4, 1981, in Bethel, Alaska. The marriage produced two children, Tsatoke, born October 3, 1981, and Dalarie Marie Peters, born September 9, 1982.

The Lone Wolfs' marriage had problems from the beginning. The couple separated shortly after Tsatoke's birth and Dalarie was born during a period of separation. Carol had physical custody of the children during this time.

In early 1983, the couple reunited in Fairbanks. In May of that year, the entire family left Alaska, traveled to Ohio and eventually settled in Pennsylvania, where Charles attended school. The couple, however, could not reconcile their differences and, in November, 1983, separated permanently when Carol moved with the children back to Bethel.

Before parting, the Lone Wolfs' entered into a custody agreement which provides for shared custody, no child support and requires Dalarie's last name to be changed to Lone Wolf. At trial, Carol testified that she signed the agreement under duress in order to be allowed to keep her son.

Since returning to Alaska, Carol has been the sole caretaker and support for the two children, maintaining a home with them and other members of her extended family. Charles, meanwhile, had no significant contact with the children between November, 1983 and May, 1985. He did not visit, correspond or contact them telephonically during this period and provided no support.

This complete lack of contact continued until Charles returned to Bethel in May, 1985. Since returning, Charles has visited the children and given them gifts, but he still provides no support. At the time of trial, Charles lived in Bethel with two children from a former marriage and his girlfriend.

Carol, age 29, is employed as a correctional officer at the Yukon Kuskokwim Correctional Facility in Bethel and grosses $3,425 per month. She works a seven-day-on, seven-day-off work schedule. During her work week she does not see the children very much. Her mother babysits for the children while she works.

Charles, age 33, holds a bachelor of science degree in natural resources management, a masters degree in education and is currently working on his doctoral dissertation. At the time of trial, Charles was unemployed and receiving $740 per month in welfare payments. He expects to receive unemployment benefits shortly. In the six months preceeding trial, Charles had worked at various jobs earning at least $10,000. Moreover, the Guardian Ad Litem (GAL) testified that Charles "ha[d] a fair amount of resources" with which he chose to do things other than provide support.[1]

Carol filed for divorce on March 21, 1985. After a one-day trial, superior court judge Christopher R. Cooke (1) awarded Carol sole legal and physical custody of the two children; (2) granted Charles weekend visitation; (3) ordered Charles to pay $400 per month in child support; (4) denied Dalarie's name change; and (5) awarded Carol reasonable costs and attorney's fees. This appeal followed.

## II

### A. Child Custody

Charles' first assertion of error is that the trial court abused its discretion by not ordering joint custody. We disagree.

A court may award shared custody to both parents if it determines it would be in the best interests of the child. AS 25.-20.060(c). However, cooperation between parents is essential if joint custody is to be in the child's best interest. *Julsen v. Julsen,* 741 P.2d 642, 648, (Alaska 1987); *McClain v. McClain,* 716 P.2d 381, 386 (Alaska 1986); *Smith v. Smith,* 673 P.2d 282, 283 (Alaska 1983).

Here, there is ample evidence in the record to support the trial court's finding that the parties could not cooperate to the extent necessary to make a joint custody arrangement work. The Lone Wolfs' marriage was strained from the outset; Charles himself described the marriage as "a constant and continuing argument." Moreover, the GAL recommended that Carol be awarded sole custody due to the couple's inability to work as a team given their differing child rearing philosophies and disparate households.

Charles' argument, that both his and Carol's joint concern for their son's developmental problems, the pretrial custody arrangement and the 1983 custody agreement evinces their ability to cooperate for the benefit of the children, is unpersuasive. First, the fact that both he and Carol met with experts to discuss their son's problems and needs, and agreed to follow their recommendations, does indicate some abili-

---

1. The record indicates that Charles spent money improving his house and lot and purchasing a trailer and a personal computer.

ty to cooperate. However, "it is not our job to reweigh the evidence. We merely determine whether the trial court's finding is supported by the record." *Brooks v. Brooks,* 733 P.2d 1044, 1051 (Alaska 1987). In this case we find that it is.

Second, Charles' reference to the parties' "ability to arrive at a beneficial pretrial custody arrangement" is misleading. This arrangement was court ordered following Charles' refusal to return the children to Carol after babysitting for them.

 Finally, Charles' reliance on the custody agreement is misplaced. He appears to argue that under our decision in *McClain v. McClain,* 716 P.2d 381 (Alaska 1986), the mere existence of the custody agreement is sufficient evidence of the couple's ability to cooperate to warrant joint custody. We disagree.

*McClain* indicates that a trial court may properly consider a custody agreement stipulating to joint custody as a pertinent factor in ascertaining whether the parents have the ability to cooperate to the extent necessary to make such custody operate in the best interests of the child. *Id.* at 385–86. The *McClain* court emphasized, however, that such agreements have "no binding force on the court" and that it must "independently determine what custody arrangement will best serve the child's interests." *Id.* at 385. In the case at bar, the trial court independently determined that joint custody was not in the best interests of the children. This determination is not clearly erroneous.

As to the rest of Charles' arguments, our review of the record indicates no clearly erroneous factual determinations or abuse of discretion in the trial court's determination.[2] In short, the trial court gave careful scrutiny to this issue and made a sound decision. Consequently, the custody award is affirmed.

### B. *Visitation*

In its Memorandum Opinion, the trial court held that Charles "should be granted reasonable rights of visitation." In its conclusions of law, the trial court set Charles' visitation rights as 10 a.m. Saturday to 6 p.m. Sunday. Charles argues that this limited visitation schedule is arbitrary and unreasonable and therefore an abuse of discretion. He contends that more frequent visitation with him and his family is in the children's best interests. Carol merely asserts that, given the animosity apparent in this case, the visitation schedule is appropriate and not unreasonable.

Our review of visitation privileges is based upon the same standard applied in other custody matters, that is, "we need only determine whether the trial court abused its discretion in fashioning suitable visitation rights." *Faro v. Faro,* 579 P.2d 1377, 1379 (Alaska 1978). *See also Curgus v. Curgus,* 514 P.2d 647, 649 (Alaska 1973).

 Here, we are of the opinion that the trial court abused its discretion in limiting Charles' visitation rights to 32 hours per weekend without setting forth any findings or reasons why his visitation privileges should be so circumscribed.

Charles is currently unemployed and thus at home virtually full time. Carol, on the other hand, is working a seven-day work schedule during which time she rarely sees the children. Given this unique factual situation, we perceive no reason why Charles should not be allowed some visitation during Carol's work week. There is no indication in the record that Charles is an unfit parent[3] and, in fact, the

---

**2.** Trial courts are vested with broad discretion in determining where custody should be placed. *McDanold v. McDanold,* 718 P.2d 467, 468 (Alaska 1986). *See also Craig v. McBride,* 639 P.2d 303, 304 (Alaska 1982); *Horutz v. Horutz,* 560 P.2d 397, 399 (Alaska 1977). Accordingly, we have repeatedly stated that we will reverse a trial court's resolution of a custody issue only if we are convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous. *E.g. McClain v.*

*McClain,* 716 P.2d 381, 384 (Alaska 1986). An abuse of discretion may be found where the trial court considered improper factors, failed to consider statutorily-mandated factors, or improperly weighed certain factors in making its determination. *Id.*

**3.** In this regard we note that the assertions in the record as to Charles' bootlegging charges have not been considered in our resolution of this issue. These facts were not before the trial

trial court found that Charles loved the children and desired to meet their needs. Moreover, the cooperation necessary to allow more liberal visitation is far less than that needed for joint custody. In short, there are inadequate findings in the record to justify limiting Charles' visitation to weekends and thus the trial court's visitation determination must be reversed. On remand, the trial court is instructed to make specific findings to support its visitation award.

### C. *Child Support*

The trial court ordered Charles to pay $400 per month in child support (i.e. $200 per child/per month). Charles contends that this order is unreasonable and therefore an abuse of discretion because he does not have the financial ability to make such payments.

■ The trial court has wide discretion in ordering child support and such determinations will be reversed only where there has been an abuse of discretion. *See, e.g., Hunt v. Hunt*, 698 P.2d 1168, 1172 (Alaska 1985). We will not find an abuse of discretion unless we have a definite and firm conviction based on the record as a whole that a mistake has been made. *Id. See also, Faro*, 579 P.2d at 1380; *Brenton v. Brenton*, 564 P.2d 1225 (Alaska 1977).

In *Hunt*, we held that in making child support awards the trial court must consider the relative financial situations of the parties and the total cost of supporting the children. 698 P.2d at 1172. In that case, Wife had no income with expenses of $3,197 for herself and two children. *Id.* Husband, meanwhile, made $6,225 per month with expenses of $4,072 for himself and one child. *Id.* The trial court effectively awarded Wife $600 per month in child support. *Id.* at 1173. We found the award to be inadequate, instructing the trial court that on remand it was to "identify the reasonable needs of the ... children, considering the station in life to which they are accustomed and the ability of the parents to meet those needs." *Id.*

■ In the instant case, the only evidence presented on the cost of supporting the children was Carol's testimony that she spends approximately $300 per month to feed them, and that daycare (which both parents and the GAL believed necessary) would cost at least $500 per month. The trial court appears to have taken the total ($800) and split it down the middle (i.e. allocating $400 per month to Charles). We perceive nothing wrong with this determination.

The record indicates that at the time of trial, Carol made $3,425 a month while Charles was receiving only $740 per month in welfare benefits. Charles also has two other children to support. On the other hand, the GAL testified that Charles "has a fair amount of resources" with which he may provide support. Moreover, the record shows that Charles earned around $10,000 in the 6 months before trial and expected to receive unemployment compensation for an unspecified amount in the near future.

The trial court considered the evidence outlined above and determined that Charles could afford $400 per month in child support payments. On balance, viewing the record as a whole, we cannot say that such a determination is clearly erroneous. The trial court's child support award is, therefore, affirmed.

### D. *Name Change*

At trial Charles requested that Dalarie's last name be changed from Peters to Lone Wolf.[4] The trial court denied this request based on Carol's objections and its determination that it lacked jurisdiction to grant such relief in a divorce proceeding.

Charles argues that the trial court erred because it had the power to order the name change under two separate theories: (1)

---

court at the time it rendered its decision and, therefore, cannot properly be considered by us for the first time on appeal. Nothing prevents the trial court, however, from assessing these new developments in its redetermination of Charles' visitation privileges.

4. Because Dalarie was born while the Lone Wolfs were separated, Carol gave Dalarie her maiden name.

through specific performance of the custody agreement; and/or (2) because Dalarie is a party to the divorce action within the meaning of AS 25.24.160(5). Neither argument is persuasive.

First, *McClain* makes it clear that custody agreements have "no binding force on the court." 716 P.2d at 385. Consequently, there was no error in the trial court's refusal to change Dalarie's name under this theory.

Second, a child is not a party to a divorce action within the meaning of AS 25.24.160(5).[5] It is clear from the context of that statute that it was meant to encompass only the parents/spouses and not the children. Charles' reliance on *Veazey v. Veazey*, 560 P.2d 382 (Alaska 1977) is inapposite. In *Veazey* the court was discussing the duties and proper role of a child's GAL when it noted that a "child is the person most interested in litigation over his custody, even though his name is not on the caption of the pleadings...." *Id.* at 386. This statement of the obvious provides no support for Charles' position.

 Even assuming, *arguendo*, that a child could be considered a party to a divorce action within the meaning of AS 25.24.160(a)(5), it does not necessarily follow that the trial court must change the child's name. AS 25.24.160(a)(5) states that the court *may* change the name of a party, it does not require the change to be made. Given this permissive language, whether or not to grant a name change rests within the discretion of the trial court subject to review under an abuse of discretion standard. Based on Carol's objection to the name change, there was no abuse of discretion in the trial court's ruling.

### E. *Attorney's Fees*

The trial court awarded Carol "reasonable attorney's fees" which the record indicates amounted to $2,510. Charles contends that this determination constitutes an abuse of discretion because it is contrary to established Alaska law.

 The award of attorney's fees in a divorce action rests within the broad discretion of the trial court, *Rostel v. Rostel*, 622 P.2d 429, 432 (Alaska 1981), and will not be disturbed on appeal unless it is "arbitrary, capricious, manifestly unreasonable, or stems from an improper motive." *Brooks*, 733 P.2d at 1058 (quoting *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

We have repeatedly held that cost and fee awards in a divorce are not to be based on the prevailing party concept, but primarily on the relative economic situations and earning powers of the parties. *Siggelkow v. Siggelkow*, 643 P.2d 985, 989 (Alaska 1982); *Cooke v. Cooke*, 625 P.2d 291, 293 (Alaska 1981); *Johnson v. Johnson*, 564 P.2d 71, 76–77 (Alaska 1977), *cert. denied*, 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978); *Burrell v. Burrell*, 537 P.2d 1, 6–7 (Alaska 1975). In divorce actions, the purpose of awarding attorney's fees is to assure that both spouses have the proper means to litigate the divorce action on a fairly equal plane. *Olsztyn v. Olsztyn*, 20 Ariz.App. 545, 514 P.2d 498, 502 (1973); *In re Crabdree's Marriage*, 523 P.2d 471, 472 (Colo.App.1974).

In *Siggelkow*, we reversed an award of attorney's fees to the wife where she earned $32,600 per year and the husband only $13,000. 643 P.2d at 989. Likewise in *Cooke*, an award of attorney's fees to the wife was reversed primarily because she was much better off economically than her former husband and no other factors justified taxing the husband with her litigation expenses. 625 P.2d at 293.

 In the case at bar, Carol had adequate funds to secure competent representation. The record also shows that Carol is much better off economically than is Charles, and there appear to be no other factors which justify taxing Charles with Carol's litigation expenses. Accordingly, we find that it was an abuse of discretion

---

**5.** AS 25.24.160(a)(5) provides in part:
In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

.....
(5) for the change of name of either of the parties.

for the trial court to award Carol attorney's fees. The award therefore, is reversed and remanded with instructions that Carol bear her own costs and attorney's fees.

### III

For the reasons discussed above, the trial court's custody, child support and the name change determinations are affirmed; the trial court's visitation and attorney's fees determinations are reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED in part; REVERSED in part; and REMANDED.