Gary Dale DIXON, Appellant,

v.

Sherilyn Barber DIXON, Appellee.

No. S–1413.

Supreme Court of Alaska.

Dec. 24, 1987.

Mark Rausch, Terry C. Aglietti, Aglietti, Pennington & Rodey, Anchorage, for appellant.

Alexis G. Foote, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

In this divorce case the husband appeals certain aspects of the trial court's property division and awards of support, fees and costs. Except for the issue of support and attorney's fees, which we remand for reconsideration, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gary and Sheri Dixon were married in 1966 and separated in 1984. They had two children, Gary, Jr. and Debra Lyn. At the time of trial, Gary, Jr. was 19. Debra Lyn was 15, living with her mother.

At the time of trial, Gary was earning $6,972.57 gross (approximately $4,900 net) per month as an employee of the Teamster's Union. Sheri was earning a gross salary of $1800 ($1400 net) per month as a bookkeeper. Sheri testified that her monthly expenses were $3,608.27. The trial court found that Sheri had "played a key role as homemaker and companion of the defendant in support of his advancement professionally." Sheri had almost completed her second accounting course and was working toward an associate's degree on a part-time student basis.

The parties accumulated considerable debts, including substantial mortgages on an Anchorage house and a Seattle condominium. They owed $17,000 to the Internal Revenue Service and over $49,000 on consumer credit. Their principal assets included the Anchorage house in which Sheri and Debra Lyn lived, the Seattle condominium in which Gary lived, Gary's pension, a boat and a motorhome.

The trial court sought to divide the assets, excluding Gary's pension,[1] and liabilities equally. The largest asset, the Anchorage house, was awarded to Sheri. Stating that it wished to effect an equal property division, the court ordered Sheri to pay Gary $43,909. The court expressly recognized that the Anchorage house was the primary asset from which Sheri could obtain the funds to pay Gary and assumed that Sheri would either sell the home or refinance it. The court ordered that this payment would not become due until July 1, 1986, with interest at 10.5% per annum, commencing on that date, giving Sheri six interest-free months from the entry of the

---

**1.** The court awarded Sheri 50% of the benefits earned during the marriage if and when the benefits are received. On appeal, Gary contests only the cut-off date used by the court for determining benefits earned during the marriage.

divorce decree in which to sell or refinance the house.

Sheri received a total of $1,945 per month interim family support from Gary. The trial court ordered Gary to pay $600 per month child support[2] and $800 per month for two years and $600 per month for two additional years as alimony.

Before trial, each party had been ordered to obtain appraisals of certain assets. Although requested by Gary to do so, the trial court made no order readjusting the burden of appraisal fees, in effect leaving each party to bear the costs of the appraisals he or she had obtained.

Finally, in dividing the parties' liabilities, the court included $6,000 for attorney's fees on Sheri's side of the ledger. Gary claims the court failed to credit him for payments he had already made toward Sheri's legal bills, thus improperly reducing his share of the marital estate.

On appeal Gary asserts that the trial court erred in

1. awarding interest on Gary's judgment from July 1, 1986, rather than the date the divorce decree or findings of fact were entered;

2. awarding too high an amount for alimony;

3. failing to divide appraisal costs equally between the parties;

4. calculating the fraction of Gary's pension earned during the marriage by the date of divorce rather than the earlier date of separation; and

5. failing to credit Gary for payments previously made towards Sheri's attorney's fees.

For the reasons stated below, we affirm the trial court's rulings on issues 1, 3, and 4 above and reverse and remand for further proceedings on issues 2 and 5.

## II. DISCUSSION

### A. INTEREST ON THE JUDGMENT.

The divorce decree was entered December 30, 1985. The decree incorporated the findings of fact, which awarded Gary a judgment of $43,909, due July 1, 1986 with 10.5% interest running from that date. Gary asserts that the trial court erred in delaying the imposition of interest. He relies on *Morris v. Morris,* 724 P.2d 527, 530 (Alaska 1986), in which we held that an award of prejudgment interest was not, as a matter of law, improper in a divorce proceeding. In *Morris* we held:

[W]e recognize that a divorce proceeding should not produce winners or losers and that a division of marital property generally is not viewed as a damage award for or against either party. However, the basic principles behind prejudgment interest remain applicable. In divorce cases, a judge has discretion in choosing a reasonable date to value the marital property. *See Hunt v. Hunt,* 698 P.2d 1168, 1172 (Alaska 1985). The court also should have discretion to award prejudgment interest from that date, if one partner in the marriage had use of money or other property for a period when the other partner was actually entitled to it. *Cf. Farnsworth* [*v. Steiner,* 638 P.2d 181, 184 (Alaska 1981)].

*Id.* at 530.

■■■■ It is clear from *Morris* that a court has discretion either to award or withhold prejudgment interest in a divorce proceeding. It is also clear that courts may award interest on a judgment in a domestic relations proceeding to the same extent interest on judgments generally is allowed by statute. *See, e.g., Wuest v. Wuest,* 72 Cal.App.2d 101, 164 P.2d 32, 37 (1945); *Williams v. Budke,* 186 Mont. 71, 606 P.2d 515, 519 (1980); 45 Am.Jur.2d, *Interest and Usury* § 60, at 57–58 (1969); Annot., *Right to Interest on Unpaid Alimony,* 33 A.L.R.2d 1455, 1456 (1954 & Supp.). The question presented here is whether the trial court is vested with discretion to deny or postpone interest on the judgment.[3]

---

**2.** At oral argument Gary's counsel withdrew his challenge of the child support award.

**3.** Gary does not contest the propriety of the July 1, 1986 payment date. He claims only that he was entitled to interest in the interim.

*Martin v. Martin,* 350 P.2d 270 (Okla. 1960), is directly on point. There the court held:

> In divorce actions where one party seeks or is awarded a money judgment in lieu of alimony or property settlement, there is no specific previously existing obligation or liability. The obligation or debt is created or fixed by such judgment, and the awarding of interest on the amount of such judgment is within the discretion of the court in adjusting the division of property. As indicated in *Harden v. Harden,* [191 Okl. 698, 130 P.2d 311 (1942)] the trial court has broad discretionary powers in divorce actions to settle the affairs of the parties. It is obvious that the trial court in the present case determined that plaintiff required time in which to liquidate assets in order to pay this sum. As above shown, it was specified in the journal entry in the divorce action that "plaintiff is ordered to pay to said defendant within thirty (30) days from this day the sum of $145,-000.00". There inheres in such judgment herein, a determination that the debt or obligation therein created, although fixed as of April 20, 1958, should not become due and payable for thirty (30) days, by the judgment's own terms. The statutory rate of interest would not be applicable during such time.

*Id.* at 273–74. *Accord Williams,* 606 P.2d at 519–20; *Primrose v. Primrose,* 663 P.2d 755, 759 (Okla.App.1983); *Griffin v. Griffin,* 34 Or.App. 765, 579 P.2d 885, 887 (1978).[4]

Sheri's situation is not unlike the wife's in *Griffin.* The *Griffin* court recognized that

> it may be in some instances inequitable to impose interest; for example, where

the obligor does not have the ability to make prompt payment. In this case the assets held by the wife are all nonliquid. The cash she brought into the marriage has all been spent. In order to discharge the lien she will have to accumulate the funds from her income or the payments on the land sale contract, sell some of her assets or borrow the necessary amount. She does not ... have the ability to withhold the funds until the due date and use them for her own purposes.

579 P.2d at 887. The *Griffin* court therefore upheld the trial court's refusal to award the husband interest on a two year lien imposed on assets awarded to the wife. *Id.*

Given the myriad considerations the trial court must balance and the broad discretion generally exercised by the trial court in cases such as these, *see, e.g., Hunt v. Hunt,* 698 P.2d 1168, 1171 (Alaska 1985); *Merrill v. Merrill,* 368 P.2d 546, 547 (Alaska 1962), the power to award or withhold interest on a judgment should prove a useful tool in effecting a just resolution of a divorcing couple's financial affairs.

We hold that the trial court did not abuse its discretion in giving Sheri six months interest-free time in which to liquidate the equity in the Anchorage house to provide funds to satisfy Gary's judgment.

### B. ALIMONY.

The trial court ordered Gary to pay alimony to Sheri in the amount of $800 per month for two years and $600 per month for an additional two years. The court found:

> The plaintiff has played a key role as homemaker and companion of the de-

---

**4.** A contrary holding was reached in *Ovens v. Ovens,* 61 Wash.2d 6, 376 P.2d 839, 842 (1962) where the court found, "it is an abuse of discretion, in the absence of a sound reason, to fail to provide for interest upon deferred payments allowed in equitable division of property." A subsequent Washington case interpreted *Ovens,* making clear that when the trial court does have a sound reason, it does not abuse its discretion in refusing to impose interest on a judgment. *In re Marriage of Yates,* 17 Wash.App. 772, 565 P.2d 825, 826 (1977).

Although we conclude that the trial court in this case expressed a sound reason for refusing interest on Gary's judgment since the findings expressly assume that Sheri will most likely satisfy the judgment by either selling or refinancing the Anchorage home, we leave these determinations to the broad discretion of the trial court. *Hunt v. Hunt,* 698 P.2d 1168, 1171 (Alaska 1985). We reject the Washington courts' requirement that the trial court justify a decision to withhold interest in a marital property distribution proceeding.

fendant in support of his advancement professionally. As such, she has worked in the home for the majority of the marriage. During the past seven years working for the same employer, she has reached a salary of $1,800 gross, $1,400 net, per month. The plaintiff is taking courses to improve her earning capacity and will need spousal maintenance for a period to realize her potential and to allow her to grow professionally, as she helped the defendant to grow and develop.

Gary asserts that since Sheri did not testify that she intended to decrease her work time in order to increase her school time, alimony should be limited to a total of $1,200, the cost of her tuition and books. Gary asserts that the support awarded, totalling $33,600, would provide Sheri with a financial windfall. Gary argues, "there was no need for the trial court to support Sheri as though she were a full-time student." We agree that Sheri has not presented a sufficiently detailed course plan and degree goal to justify an award of "rehabilitative alimony" as we used that term in *Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981). As we recently held in *Miller v. Miller*, 739 P.2d 163 (Alaska 1987), an award of rehabilitative alimony must be supported by a finding that the recipient spouse "intends to apply the alimony toward job training." *Id.* at 165. Sheri's plan to take three units each semester toward the 54 necessary for her degree will not prevent her from working full-time and therefore cannot justify the trial court's substantial award of $800 per month for two years and $600 per month for an additional two years.

▇▇▇ We recognize, however, that someone in Sheri's position, who is accustomed to living on a combined annual income of over $100,000, will have a very difficult time adjusting to a significantly lower single income after divorce. When a couple has sufficient assets, the spouse with the smaller earning capacity can and should receive a larger share in the property distribution to aid him or her in this transition. *See Merrill*, 368 P.2d at 547 n.

4; *Brooks v. Brooks*, 677 P.2d 1230, 1233 (Alaska 1984). But here the trial court divided the assets and liabilities equally and instead awarded Sheri alimony.

Alaska law requires that alimony awards be "just and necessary." AS 25.24.-160(a)(2). In addition, the court should consider:

> the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

*Messina v. Messina*, 583 P.2d 804 n. 3 (Alaska 1978) (quoting *Merrill*, 368 P.2d at 547–48 n. 4). These are the same factors we have instructed trial courts to consider in making equitable divisions of marital property. *Id.*

We have announced a policy of encouraging trial courts to provide for parties' financial needs by property disposition, rather than by alimony. *Hunt*, 698 P.2d at 1172; *Malone v. Malone*, 587 P.2d 1167, 1168 (Alaska 1978); *Messina*, 583 P.2d at 805. But this rule obviously presumes that there is sufficient property to provide for the parties' needs. In this case, the parties acquired substantial marital assets, but were also deeply in debt. The trial court could have awarded to Sheri a greater portion of the equity in the Anchorage house instead of awarding her alimony. Gary testified, however, that he had over $23,300 in credit bills that were due or past due. In addition, the parties owed $17,000 to the IRS. It therefore appears that the trial court justly and necessarily concluded that the equity in the Anchorage house was needed to ease the parties' immediate financial crisis.

An alimony award of limited duration designed to aid Sheri in reorienting her lifestyle to her new financial circumstances may be appropriate. Indeed, "reorientation alimony" may be the only feasible method of achieving an equitable resolution

of the parties' financial affairs in this case, but there is insufficient evidence in the record for us to determine the proper amount and duration of such award. As stated above, Sheri's vague education plans do not support the trial court's rehabilitative alimony award. Accordingly, we remand the case with instructions that the trial court make specific findings regarding the propriety of either a rehabilitative or reorientation alimony award and the proper amount thereof.

## C. APPRAISAL COSTS.

In the course of pre-trial proceedings, the trial court ordered:

> 1. The parties shall cooperate in appraising marital assets by inventorying the same and arranging for appraisals/opinion letters which fairly value the contents of the marital estate. *Each party shall be responsible for obtaining valuations for the items which they have in their possession and control.*
>
> 2. The parties shall split all costs associated with obtaining the appraisals *contemplated in paragraph 1* of this order.

(Emphasis added).

The original findings are silent about appraisal costs. When Gary requested the trial court to make additional findings regarding appraisal costs, it refused to do so, crossing out the appraisal costs paragraph of a proposed order prepared by Gary's counsel. In effect, each party was required to pay for any appraisals he or she obtained.

 Gary obtained an appraisal and an opinion letter on the Anchorage house at a total cost of $430, duplicating the appraisal obtained by Sheri at a cost of $300. Since Sheri was residing in the Anchorage house, it was not in Gary's possession and control. Therefore, the appraisal and opinion letter obtained by Gary on the Anchorage house were not "appraisals contemplated in paragraph 1" of the pre-trial order. The trial court correctly refused to order Sheri to share these costs. As for the remaining appraisal costs, Gary ob-

tained an appraisal of his Seattle condominium and his teamster pension, which cost $350 and $370 respectively (totalling $720) and were appraisals contemplated by the order. Thus, Sheri would owe Gary one-half the difference between what he had paid for appraisals contemplated in paragraph one ($720) and what she had paid ($300), or $210. However, given the great disparity in the parties' earning capacities, we conclude that the trial court did not abuse its discretion in requiring Gary to pay $210 more for appraisals than Sheri.

## D. CUT–OFF DATE FOR EVALUATING THE MARITAL PORTION OF GARY'S PENSION.

 Gary asserts that October 3, 1984, the date of the parties' separation, should have been used to determine when the marital contribution to his pension benefits ended. The trial court used October 15, 1985, just after trial, as the cut-off date.

In *Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986), we stated:

> We decline to specify, as a matter of law, that the effective date when [post-separation] earnings become severable from marital property is at separation or at filing for divorce. Each case must be judged on its facts to determine when the marriage has terminated as a joint enterprise.

At trial Gary testified that he believed Sheri should be responsible for half of almost $10,000 in charges made on his American Express account after separation "because I believe that everything until this thing's final is equal, should be 50/50." The trial court apparently agreed since it included these American Express charges as a marital liability. He also testified that Sheri should be partly responsible for $23,300 in consumer credit that he incurred after separation. The trial court did not agree that these loans were marital liabilities. This testimony nonetheless indicates that in Gary's view the marriage continued as a "joint enterprise" until the trial. The trial court did not abuse its discretion in adopting October 15, 1985, as the date of termination of the joint enterprise and thus

as the cut-off date for valuing Sheri's interest in Gary's pension.

### E. ATTORNEY'S FEES.

Gary claims that he was double charged for Sheri's attorney's fees because he was not given credit for $5,500 in payments he had made toward her fees prior to entry of the decree. When the trial court made its equal division of assets and liabilities, it listed the full $6,000 as a liability on Sheri's side of the ledger. Earlier, $5,500 attorney's fees had been calculated into Sheri's expected expenses, to be paid out of the $1,945 per month interim family support she was to receive from Gary.

At trial Sheri testified that she incurred approximately $3,000 in unexpected expenses during this interim period which prevented her from making payments toward her attorney's fees. In addition, she testified that Gary was occasionally late with payments or paid less than he owed and that she incurred increased grocery costs while Gary, Jr. lived with her.

One interpretation of the trial court's resolution of the attorney's fees issue is that it intended simply to make an after-the-fact modification of the interim support award when it refused to credit Gary for payments toward Sheri's attorney's fees.[5] However, the trial court made no findings so indicating, and we are not otherwise able to determine from the record what was intended by this omission. If Gary is correct, he will have already paid Sheri $5,500 that should have been applied by her to her prospective attorney's fees. Nevertheless Gary may have to pay an additional $3,000 to Sheri for unexpected expenses.

The trial court's allocation of an additional $3,000 for attorney's fees as a cost to Gary is vacated and the issue remanded for redetermination. In no event may the award to Sheri exceed the actual attorney's fees incurred by her.

### III. CONCLUSION

For the reasons stated above we AFFIRM the trial court's delay of interest on the judgment, disposition of appraisal costs, and determination of the proper cut-off date for calculating the portion of Gary's pension earned during the marriage.

We REVERSE the alimony award and attorney's fee award and REMAND for further proceedings consistent with this opinion.

---

5. We can affirm a decision on grounds different than those advanced by the trial court, even on grounds not raised by the parties below, so long as the record supports our resolution. *Foster v.* *Foster,* 684 P.2d 869, 872 n. 6 (Alaska 1984); *Native Village of Eyak v. G.C. Contractors,* 658 P.2d 756, 758 (Alaska 1983); *Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979).