Donald Allen **BIRD**, Appellant,

v.

Lynn Ellen **STARKEY**, Appellee.

No. S–7308.

Supreme Court of Alaska.

April 4, 1996.

Max F. Gruenberg, Jr., Jennifer L. Holland, Gruenberg and Clover, Anchorage, for Appellant.

Maryann E. Foley, Anchorage, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, EASTAUGH, JJ., and SHORTELL, J., Pro Tem.*

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

The mother and father of a young boy disagree as to where their son should attend kindergarten in Anchorage. The superior court issued an order that he attend Orion Elementary School for his kindergarten year. The father appeals.

## II. FACTS AND PROCEEDINGS

Donald Allen Bird ("Don") and Lynn Starkey (now Starkey–Shuler) ("Lynn") lived together in a domestic relationship which produced a son, Justin Michael Starkey, born January 11, 1990. On February 19, 1993, after the relationship ended, Don filed a custody complaint. The parties ultimately negotiated a "Child Custody and Support Agreement" which was executed December 16, 1994. The trial court, finding the Agreement to be in Justin's best interests, incorporated the Agreement into its custody and support decree.

The Agreement is, by its terms, temporary until June 15, 1996. Until that date, either party has the right to seek a court hearing to change the Agreement under a "best interest" analysis. Otherwise, the Agreement is to become permanent on June 16, 1996, subject to modification only through a showing of change in circumstances. The parties chose that date "because that length of time will give them the opportunity to evaluate this Agreement through Justin's first school year."

The parties agreed to joint legal and physical custody, and agreed to cooperate in all aspects of child-rearing:

> Both parties shall advise and consult with each other on all major decisions concerning the health, welfare, religious training, upbringing, and education of their child, including the choice of day care, school, camps and vacations, and health care issues, to arrive at a harmonious policy calculated to promote the child's best interests.

The Agreement set a schedule for shared physical custody which gave Lynn custody 51.4% of the time and gave Don custody 48.6% of the time. According to Lynn, Justin is with her 56% of the school year.

Justin was scheduled to begin kindergarten on September 5, 1995. However, Don and Lynn were unable to agree upon which school Justin was to attend. They attempted mediation but failed to reach an agreement on August 22. On August 29, Lynn filed a motion in superior court for an order allow-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

ing Justin to attend Orion Elementary School, which is Lynn's neighborhood school at Elmendorf Air Force Base.

Don had already applied under the lottery system for a space at Inlet View Elementary. The day after Lynn filed her motion, August 30, Don applied to the Anchorage School District for a zone exemption for Justin to attend Inlet View. Justin was accepted into Inlet View the same day.

Don filed an opposition to Lynn's motion on August 31, and asked the court to issue an order for Justin to attend Inlet View.

On September 1, 1995, without explanation, Judge Reese of the superior court issued an order for Justin to attend Orion. Don appeals.

## III. STANDARD OF REVIEW

■ This court will overturn a lower court's resolution of a custody issue only when there is an abuse of discretion or where there are clearly erroneous findings of fact. *Howlett v. Howlett,* 890 P.2d 1125, 1126 (Alaska 1995); *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1190 n. 2 (Alaska 1987). An abuse of discretion may be found "where the trial court considered improper factors, failed to consider statutorily-mandated factors, or improperly weighed certain factors in making its determination." *Lone Wolf,* 741 P.2d at 1190 n. 2.

1. Lynn objects to all of Don's assertions regarding the differences between the two schools as hearsay, since they are based apparently on conversations he has had with officials from the two schools and from the Anchorage School District. It is true that no affidavits from those officials were presented; the case was necessarily briefed hurriedly and was decided on the parties' own affidavits. No hearsay objection was raised before the superior court, however. Lynn's hearsay argument is thus waived. *See Adkins v. Nabors Alaska Drilling, Inc.,* 609 P.2d 15, 22 (Alaska 1980) (defects waived where hearsay in affidavit was not objected to); *Smith v. Sampson,* 816 P.2d 902, 907 (Alaska 1991) ("In the absence of a hearsay objection, hearsay evidence is competent evidence which may be considered.").

Lynn also contends that Don consented to enrolling Justin in Orion. This argument is without merit. As her own affidavit points out, Don gave permission for her to enroll Justin in Orion

## IV. DISCUSSION

### A. The Disagreement

■ Don argues that it is in Justin's best interest to attend Inlet View. He notes that students from Inlet View score well above average on certain standardized tests; that Inlet View is under capacity whereas Orion is over capacity; that Inlet View's program is "among the strongest in the city [with] a long-standing history of stability and community involvement"; that parental involvement at Inlet View is more extensive than at Orion; and that the physical facilities at the two schools are quite different and that Orion has a serious funding problem.[1]

Don suggests that the trial court's decision was based on factors other than Justin's best interests. For example, Lynn's affidavit before the trial court suggested that Orion was more convenient for her and that Inlet View was "no where near either of our homes."

Lynn maintains that Justin's best interests are served by the court's order for him to attend Orion. She relies primarily on the argument that attending a school in a neighborhood in which he spends 56% of the school year will better serve Justin's "physical, emotional, mental, religious, and social needs"[2] by allowing him more interaction with neighborhood children. She also impliedly suggests that Orion's full-day kindergarten program serves Justin's interests better than Inlet View's half-day program.[3] Thus, she claims that the trial court's decision was

pending his applications to various other area schools, but she and Don "have been unable to agree as to what school Justin should attend on September 5."

2. Alaska Statute 25.24.150(c) sets out the factors a court should consider in making a custody determination according to a child's best interests. One of these factors is the "physical, emotional, mental, religious, and social needs of the child." AS 25.24.150(c)(1).

3. Don's brief relates his conversations with two Anchorage School District officials regarding half-day and full-day kindergartens. He claims that full-day kindergartens use the extra time only for free play and arts activities designed to sharpen the children's socialization and verbal skills. Don claims to be a very active parent and suggests that Justin will better acquire such skills at home.

predicated upon Justin's best interests and was not an abuse of discretion.

For the reasons that follow, however, we cannot address the relative merits of the two kindergarten programs in relation to Justin's needs.

### B. *Lack·of Findings by the Trial Court*

The superior court ordered that Justin attend Orion without any explanation or findings. Thus, any attempt to review the court's decision for an abuse of discretion using the considerations outlined above would be mere guesswork. The superior court may abuse its discretion by considering improper factors or improperly weighing statutorily mandated factors. *Lone Wolf,* 741 P.2d at 1190 n. 2. We do not know what factors it considered here. Nowhere in the court's order is it even made clear that Justin's best interests were considered.

We have previously remanded cases where the superior court has failed to explain or justify its actions. In *Hakas v. Bergenthal,* 843 P.2d 642 (Alaska 1992), this court remanded a custody issue to the superior court "for the purpose of redetermining custody based upon a best interests of the child analysis with appropriate findings of fact which address all relevant criteria of AS 25.24.150(c)." *Id.* at 645. In that case, "review of the record reveal[ed] no express consideration by the superior court of [the child's] best interests in any context." *Id.* Rather, it appeared that the custody determination was made as a sanction against one parent for noncooperation. *Id.*

In *Lone Wolf,* 741 P.2d at 1190–91, this court remanded a visitation determination after concluding that the superior court had abused its discretion by including inadequate findings to justify its limitation on the father's visitation. On remand, the court was instructed "to make specific findings to support its visitation award." *Id.* at 1191.

This court recently reviewed the policy behind requiring superior court judges to articulate the basis of their decisions on child support matters. In the context of a Civil Rule 90.3 child support modification motion, we wrote that "the trial court must provide '[a]dequate findings of fact ... so that a reviewing court may clearly understand the grounds on which the lower court reached its decision.'" *Waggoner v. Foster,* 904 P.2d 1234, 1235 (Alaska 1995) (remanding modification decree for specific findings relating to best interests of children) (alterations in original) (quoting *Wright v. Gregorio,* 855 P.2d 772, 773 (Alaska 1993)).

▮▮▮ This line of cases requires the trial court to articulate the reasons for its holding where those reasons are not apparent from the record.[4] Without any findings, the order becomes essentially unreviewable by this court. We thus find it necessary to remand for specific findings as to where Justin should attend school and why.[5]

---

4. The findings need not be extensive, but must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved. *See Julsen v. Julsen,* 741 P.2d 642, 649 n. 10 (Alaska 1987) (rejecting need for express tally of all statutory factors where record reflects careful scrutiny by superior court); *McClain v. McClain,* 716 P.2d 381, 384–85 (Alaska 1986) (holding lack of specific findings under statute not necessarily fatal to initial custody order where reviewing court can glean factors from record to support more general findings).

5. Lynn argues that Civil Rule 52(a) does not require findings. Rule 52(a) provides that in all "actions" without a jury, the trial court shall make specific findings of fact and conclusions of law; but "[f]indings of fact and conclusions of law are unnecessary on decisions of *motions* under Rules 12 or 56 or any other *motion* except as provided in Rule 41(b)." (Emphasis added.) Because her pleading to the trial court was titled "Motion for Minor Child to Attend Orion Elementary School," she argues that Rule 52(a) applies.

This argument fails. The moniker "motion" on papers submitted to a trial court does not relieve that court from its duty to explain its reasoning in child custody issues, especially where its order operates as a final judgment. This court has consistently required findings from a trial court after a party moves for a child support or custody order. *See Waggoner,* 904 P.2d at 1235 (remanding for specific findings after trial court denied motion to·modify divorce decree); *Keating v. Traynor,* 833 P.2d 695, 696–97 (Alaska 1992) (remanding for specific findings after trial court modified support order as requested by CSED motion).

While the issue before the trial court was briefed and concluded within a matter of a few days, briefings to this court were concluded only in December. On remand, the trial court may take into consideration that a significant portion of the school year has passed already with Justin at Orion. Also, if the parties have not agreed upon a school for Justin for the years to come, the trial court may wish to entertain motions to address that issue at this time.

## V. CONCLUSION

■ We REMAND to the superior court for specific findings relating to Justin's best interests.[6]

---

6. We decide this case as presented because the parties have submitted to the court's authority and neither party has questioned the wisdom of having a court choose Justin's kindergarten. We take this opportunity, however, to express our substantial reservations about the submission of this type of decision to a judicial tribunal.

We recognize that other courts, at least intermediate appellate courts, have decided similar cases and have indicated that the subject matter is appropriate for judicial review. *See, e.g., Lombardo v. Lombardo*, 202 Mich.App. 151, 507 N.W.2d 788, 791–92 (1993) ("[J]oint custody in this state by definition means that the parents share the decisionmaking authority with respect to the important decisions affecting the welfare of the child, and where the parents as joint custodians cannot agree on important matters such as education, it is the court's duty to determine the issue in the best interests of the child."). However, we are convinced that the choice of school for a young child should lie with the parents, and not with a judge.

The Alaska Legislature has expressed a policy favoring joint custody wherever practicable. *See* ch. 88, § 1, SLA 1982 ("[I]t is in the public interest to encourage parents to share the rights and responsibilities of child rearing.... The legislature also finds that it is in the best interests of a child to encourage parents to implement their own child care agreements outside of the court setting."); *Bell v. Bell*, 794 P.2d 97, 99 (Alaska 1990).

This does not mean, however, that joint legal custody is always appropriate. We have noted that "cooperation between parents is essential if the arrangement is to be in the best interests of the child." *McClain*, 716 P.2d at 386. Joint legal custody is predicated upon the parents' ability to reach ultimate agreement on the important decisions involved in child rearing. Where the parents cannot agree on these issues, "this may indicate a lack of the cooperation necessary for joint custody to be successful." *Id.; see also Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991) (joint legal custody only appropriate where parents can cooperate); *Bell*, 794 P.2d at 99 (same); *Smith v. Smith*, 673 P.2d 282, 283 (Alaska 1983) (inability to cooperate in making decisions furnishes sufficient basis in law for court to reject joint custody). The submission of the choice of kindergartens for the child to the court is indication in itself that a joint decisionmaking arrangement is not working, at least with respect to educational decisions.

In the future, a judge faced with a similar motion may choose to treat it as one to modify the joint custody arrangement with respect to educational issues, assuming the parties can continue to agree on other issues. The court could then order further briefing from the parties as to which parent should be granted authority to make educational decisions. While a judicial tribunal may be ill-equipped to decide which school a child should attend, it is competent to decide *who* should decide.