OPINION
 

 RABINOWITZ, Chief Justice.
 

 I. INTRODUCTION
 

 Raymond Bays appeals from a judgment of the superior court which awarded his ex-wife, Judy Wilmarth, formerly Judy Bays, temporary rehabilitative support and an interest in his pension plan. Raymond argues that the superior court abused its discretion by awarding rehabilitation alimony. He also claims that the superior court invaded his “separate” pre-marital and post-separation property without justification when it equally divided his entire pension as of the time of trial. Finally, Raymond argues that the court improperly calculated his child support obligation under Civil Rule 90.3.
 

 Judy argues that the award of temporary rehabilitative support was entirely justified because there were no significant assets in the marital estate other than the pension which would not be available for division until Raymond retired. She further argues that the record supports the superior court’s finding that the parties agreed that she was “entitled to one-half of the accumulated value/benefits” of the pension plan as of the date of trial. From this she concludes that the superior court did not abuse its discretion when it equally divided Raymond’s entire pension.
 

 Judy further contends that the superior court correctly calculated Raymond’s child support obligation under Civil Rule 90.3 since Raymond’s pension contributions are non-taxable and were deducted from his total compensation before being reported on his W-2 form.
 

 
 *484
 
 II. STATEMENT OF THE CASE
 

 The parties were married in 1975 after living together for approximately one year. They have two teenage children. The Bays physically separated in March of 1988, and the case went to trial in December 1988.
 

 Prior to trial, the parties agreed that Judy would receive sole custody of the children and that Raymond would be granted reasonable visitation rights. Although not formally agreed upon, it was also understood that Raymond would make child support payments to Judy pursuant to Civil Rule 90.3 guidelines, and that he would be responsible for the parties' marital debts.
 

 Due to economic reverses, the only significant marital asset held by the parties at the time of their divorce was Raymond’s vested pension plan. At the time of trial, Raymond had completed fourteen years and two months of continuous employment as a firefighter for the Municipality of Anchorage, having worked since October 3, 1974. The superior court found Raymond’s gross annual earnings were $59,934.42 at the time of trial. Raymond’s compensation package also included vested membership in the Municipality’s Police and Fire Retirement System Plan III.
 
 [1]
 

 Raymond began making mandatory monthly contributions to the retirement plan from his date of hire; this was seven months before he and Judy were married, but while they were living together. He continued making monthly contributions during the nine months after he and Judy separated prior to their divorce.
 

 The value of the pension plan at the time of trial was in dispute. If Raymond had terminated his employment with the Municipality in December of 1988, he would have been entitled to receive approximately $57,-000 (the amount of his accumulated contributions plus interest). Raymond argued that this figure represents the pension’s value for purposes of the property division. In lieu of rehabilitative spousal support, Raymond proposed buying out Judy’s half-interest in the pension at a rate that would provide her with $1,500 a month in combined child support and debt payments.
 

 However, Judy argued that the pension was worth considerably more than this “cash out” figure, noting that if Raymond continued to work ten more months (i.e. complete 15 full years) he would be entitled to almost $1,600 a month for the rest of his life upon retirement.
 

 At the conclusion of the trial, the superi- or court awarded Judy temporary rehabilitative spousal support. It stated,
 

 [t]he reason why I’ve ordered rehabilitative support in this case [is that] there aren’t assets which can be resolved and the pension is worth much more than [Mr. Bays] would get out by selling if he quit today and was paid back his contribution plus a little bit of interest.... I also think that this will restore Mrs. Bays to a reasonable position. It appears that she ... has been making every effort not to be extravagant during this time.... And, it appears that she is doing those things which are necessary to get herself, her life, back in order. ...
 
 [2]
 

 The superior court concluded that “[t]he testimony of both parties, and the arguments made by their respective attorneys, indicated that the parties are agreed” that Judy is entitled to one-half of the accumulated value/benefits of the pension.
 
 [3]
 
 The
 
 *485
 
 court further found that the parties were “financially interdependent as of the date of trial[.]” The court then awarded Judy
 

 a percentage interest in the benefits of [Mr. Bays’] Retirement System Plan, to be evidenced by a Supplemental Qualified Domestic Relations Order, and calculable by dividing the total number of accredited months in service that he [Mr. Bays] has at the time he begins to receive said benefits into 85 months (one-half of the total accredited months [Mr. Bays] had as of the time of trial).
 

 In calculating Raymond’s child support obligation under the Rule 90.3 formula, the superior court deducted federal taxes and union dues from Raymond’s 1987 reported gross income before multiplying the figure by 27%. However the court did not deduct Raymond’s mandatory contributions to his Retirement System Plan because it found that those contributions “are made pre-tax, and are thus not included in his reported gross income.”
 
 [4]
 

 III. THE SUPERIOR COURT’S AWARD OF TEMPORARY REHABILITATIVE SUPPORT TO JUDY WIL-MARTH.
 

 As indicated previously the superior court awarded Judy Bays $600 per month for thirty-one months as temporary rehabilitative support. Former AS 25.24.160(3) authorizes trial courts to grant maintenance payments to a spouse which are “just and necessary” without regard to fault.
 
 [5]
 

 Here, it is undisputed that Raymond is a well paid city employee and that Judy has few job skills. Judy has no assets with which to provide for herself and her children while she attends college. Judy’s plan to gain job skills was found by the superior court to be “necessary to get herself, her life, back in order[.]” Given the facts of this record and the limited duration of the superior court’s award of reasonable rehabilitative support, we conclude that the superior court did not abuse its discretion in awarding this support.
 

 One additional facet of this issue remains to be addressed. We take this occasion to advise that our rule which “established a preference for meeting the parties’ needs with the division of property, rather than alimony, where the marital assets are adequate to do so,” does not apply to rehabilitative alimony or support of limited duration.
 
 [6]
 

 IV. THE SUPERIOR COURT’S EQUAL DIVISION OF RAYMOND BAYS’ PENSION BENEFITS.
 

 Raymond contends that the superior court improperly included in the property available for distribution seven months of pre-marital pension contributions and nine
 
 *486
 
 months of post-separation contributions.
 
 [7]
 
 On the basis of our review of the record, we conclude that the superior court did not err in its division of Raymond’s pension benefits.
 

 As noted above, the superior court found from the testimony of both parties, and the statements of their respective counsel, that the parties agreed Judy was entitled to one-half of the accumulated value of Raymond’s pension. Study of the record shows that Raymond considered the entire pension accrued during the parties’ cohabitation and marriage to be part of the marital estate. At trial, Raymond never differentiated the pension contributions he made before the parties’ marriage or those made after the parties’ separation. In light of the superior court’s finding as to this issue, and its evidentiary support in the record, we conclude that Raymond waived any objection to the superior court’s division of pension benefits as of the date of trial.
 

 The superior court’s division of Raymond’s pension benefits can be sustained on the following alternative grounds. The superior court found that the parties were “financially interdependent” as of the date of trial. In
 
 Schanck v. Schanck,
 
 717 P.2d 1, 3 (Alaska 1986), we
 

 declined to specify, as a matter of law, that the effective date when [post-separation] earnings become severable from marital property is at separation or at filing for divorce. Each case must be judged on its facts to determine when the marriage has terminated as a joint enterprise.
 

 We continued, “the issue of post-separation earnings requires a determination of when a married couple cease functioning economically as a single unit.”
 
 Id.
 
 at 3 n. 7. In
 
 Dixon v. Dixon,
 
 747 P.2d 1169, 1174 (Alaska 1987), on facts quite similar to the present case, we upheld the superior court’s determination that the marital contributions to a husband’s pension ended on a date just after trial. The husband had testified that his wife should be responsible for half of the post-separation debts “ ‘because I believe that everything until this thing’s final is equal, should be 50/50.’”
 
 Id.
 
 We concluded that “[t]his testimony ... indicated] that in [the husband’s] view the marriage continued as a ‘joint enterprise’ until the trial.”
 
 Id.
 

 In this case, Raymond “made interim contributions to the housing, utilities, and support needs of Judy and their two minor children.” When asked by her counsel why she had not sought court action to obtain more money from her husband, Judy replied, “[b]ecause I know that he had debts to pay, and I was hoping we could get them paid.” Given this evidence, and Raymond’s position that he considered the entire pension accrued during cohabitation and the parties’ marriage to be part of the marital estate, we hold that the superior court’s decision to use the date of trial for division of Raymond’s pension was not an abuse of discretion.
 

 V. THE SUPERIOR COURT’S COMPUTATION OF RAYMOND BAYS’ CHILD SUPPORT OBLIGATION.
 

 Rule 90.3 specifies that a non-custodial parent of two children is obligated to pay child support to a custodial parent in an amount equal to 27% of the non-custodial parent’s “adjusted annual income.” Civil Rule 90.3(a). “Adjusted annual income” is “the parent’s total income from all sources minus ... mandatory deductions such as federal income tax, social security tax, mandatory retirement deductions and mandatory union dues[.]”
 
 Id.
 

 In making its child support calculation in this case, the superior court apparently relied on (1) Raymond’s 1987 W-2 form; (2) Judy’s attorney’s statements that the pension contributions are deducted from Raymond’s gross income prior to being reported on his W-2; and (3) Raymond’s testimony that he was making about the same income as in 1987. Both parties agree that the “only question of interest to this court is whether the $59,934.42 gross income fig
 
 *487
 
 ure included the $6,560.72 contributed by [Raymond] to his retirement plan.” Raymond argues that “[a]t the very least the court should order a hearing to determine ... whether the employee contributions were, or were not, included in the gross income figure found by Judge Carlson.”
 

 The W-2 form by itself does not provide support for the superior court’s finding. However, Judy points out that the report on Raymond’s pension deductions indicates that they are non-taxable and therefore, presumably, those deductions would not be included on his W-2 form as the base or gross figure from which to calculate his federal tax liability.
 

 According to Raymond the report shows that
 

 his contribution to his retirement plan was included in the “other deductions” category and that the total of
 
 “gross
 
 pay” as contrasted with a lesser sum characterized as “taxable gross” less “taxes” less “other deductions” equals “net pay.” It is very clear that this item is reported as part of Mr. Bays [sic] gross income, but is not available to him to spend.
 

 We do not find Raymond’s argument persuasive. Simply because a single pay statement shows that this pension contribution was deducted from his “gross pay,” it does not follow that the total wage figure reported in his W-2 form is also a pre-de-duction figure. In short, we conclude that Raymond has failed to demonstrate a mistake on the superior court’s part in its calculation of his child support obligation.
 
 [8]
 

 AFFIRMED.
 

 [1]
 

 . Raymond answered an interrogatory regarding his pension plan as follows:
 

 Plaintiff [Mr. Bays] is vested under the retirement plan provided public safety employees of the Municipality of Anchorage. The total cash value is about $56,000. Pension will pay 33 ½% of salary upon retirement after 15 years and 50% after 20 years contact Lee Wentworth 343-6440.
 

 [2]
 

 . In its written decision, the court awarded Judy $600.00 a month for thirty-one months as temporary rehabilitative support. On appeal, Raymond points out that the trial court awarded Judy more than she requested. However, Raymond does not argue that this constituted an abuse of discretion.
 

 [3]
 

 .At no time prior to or during the trial did Raymond or his attorney contest Judy’s claim that the entire fourteen year and two month period should be included in the property division. Raymond repeatedly referred to Judy’s interest in the pension as "her half.” In propounding a question to Raymond on direct examination, his attorney stated,
 

 
 *485
 
 Okay. Now, we’ve calculated ... that the present value of those pension rights are around $57,000.00. And,
 
 they’ve been all earned during your marriage, so, presumptively Mrs. Bays would be entitled to half....
 
 [h]ow do you propose that she get her half, this say $28,500.00, roughly?
 

 (Emphasis added.) However, after the superior court had rendered its oral decision, Raymond objected to the proposed finding of fact concerning the purported agreement of the parties contending that the court’s finding "is simply not true.”
 

 [4]
 

 .In a divorce proceeding, the superior court’s factual determinations will not be disturbed unless clearly erroneous. Civil Rule 52(a). Under AS 25.24.160(4), the superior court has broad latitude in making its property division. We will not disturb a property division absent a showing of abuse of discretion, i.e., clear injustice.
 
 Lang v. Lang,
 
 741 P.2d 1193, 1195 n. 4 (Alaska 1987);
 
 see abo Moffitt v. Moffitt,
 
 749 P.2d 343 (Alaska 1988);
 
 Brooks v. Brooks,
 
 677 P.2d 1230, 1232 (Alaska 1984). Whether the trial court applied the appropriate legal standard in exercising its broad discretion is a question of law.
 
 Laing v. Laing,
 
 741 P.2d 649, 651 (Alaska 1987);
 
 Wanberg v. Wanberg,
 
 664 P.2d 568, 570 (Alaska 1983).
 

 [5]
 

 . The 1990 amendments to this statute do not apply to this case. Moreover, these amendments would not change the outcome. Indeed, the express purpose of the 1990 amendments was to "restate the principal factors found in the case law, not to change them, affect the interpretation given to them, or preclude changes or additions to them by other court rulings.” Ch. 130, § 1, SLA 1990.
 

 [6]
 

 .
 
 Schanck v. Schanck,
 
 717 P.2d 1, 5 (Alaska 1986).
 

 [7]
 

 . Raymond argues that the superior court should have divided 154 months by 2, leaving 77 months (rather than dividing 170 months by 2, leaving 85 months).
 

 [8]
 

 . It is open to Raymond Bays to seek modification of the child support award, under Civil Rule 90.3, if he can demonstrate that his annual income for 1988 and 1989 is in fact less than the superior court found it to be for 1987.