Patricia HANLON, Appellant,

v.

Joseph A. HANLON, Appellee.

No. S–5351.

Supreme Court of Alaska.

March 25, 1994.

Rehearing Granted in part, Denied
in part May 3, 1994.

William T. Ford, Anchorage, for appellant.

Patrick J. McKay, Anchorage, for appellee.

Before MOORE, C.J.; and RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J., Pro Tem.*

## OPINION

BRYNER, Justice, Pro Tem.

This appeal arises from a divorce action between Patricia and Joseph Hanlon. Patricia Hanlon appeals, contending that the trial court erred in fixing the date for determining the portion of Joseph's retirement benefits to be included as marital assets, in awarding her insufficient spousal support and an inadequate share of the marital property, and in failing to allow her to remain in the family home for a reasonable period after the divorce. We affirm in part and remand for further findings.

## I. FACTS

Patricia and Joseph Hanlon were married in Massachusetts in 1968. Throughout the course of their marriage, Joseph has worked as an FBI agent. For the first several years of the marriage, Patricia taught school; after the birth of her first child, she became a full-time homemaker. In 1983, the FBI trans-ferred Joseph to Alaska. Patricia and the three Hanlon children moved to Alaska to join Joseph in 1985. In early November 1986, Joseph moved out of the family home and into an apartment. Several years later, in July 1990, Patricia and Joseph agreed to dissolve the marriage. They were unable to agree on a division of marital property, however, and Joseph filed for divorce in March 1991.

At the time of trial, Joseph was forty-nine years old and was still employed by the FBI. He had less than eight years remaining before mandatory retirement and earned $89,-000 per year, a portion of which was deposited directly to a deferred income account.

Patricia was forty-seven years old and worked part-time as a substitute teacher, averaging approximately $545 per month income. Patricia suffered from rheumatoid arthritis, a chronic and progressive bone disease that impaired her earning capacity. The evidence presented by Patricia and Joseph conflicted, however, as to the extent of the impairment and its impact on Patricia's ability to pursue a teaching career.

At the time of trial, only one of the Hanlons' children, sixteen-year-old Michelle, was still a minor. She remained in the family home with Patricia. Patricia and Joseph agreed that Michelle would remain in Patricia's physical custody until Michelle turned eighteen in June 1994, and that Joseph would pay monthly child support of $1,000.

The Hanlons' marital assets included a variety of personal items that they had divided by agreement. The marital assets also included their Anchorage home, which they agreed had essentially no equity, Joseph's retirement benefits,[1] an IRA account valued at approximately $17,400, about $7,800 in unused leave Joseph had accrued, and the proceeds from the Hanlons' former family

---

* Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

1. The trial determined that all portions of Joseph's retirement benefits earned during the marriage would be divided by means of a qualified domestic relations order so as to insure that Patricia would remain eligible for health insurance through Joseph's employment with the FBI. The parties disputed only the correct date for valuation of the retirement benefits as a marital asset.

home in California, which they sold in May 1991 for $436,567.57.[2]

The primary issues that remained unresolved at the time of trial were the correct date for distinguishing between the marital and post-marital portions of Joseph's retirement benefits, how much compensation Patricia should receive—either in the form of spousal support or an increased share of the marital estate—in light of her reduced earning capacity, and who should receive the Anchorage family home.

At trial, the court fixed the date for calculating the marital portion of Joseph's retirement benefits at April 1988. The court awarded Patricia spousal support of $1500 through January 1993, decreasing to $1000 per month thereafter until Patricia became eligible to receive her share of Joseph's retirement benefits. The court ordered all other marital assets and liabilities except the Anchorage home divided equally, specifically directing that the proceeds from the sale of the California home be applied first toward payment of various marital debts and the rest divided evenly between the parties. Finding no equitable value in the Anchorage home, and concluding that Patricia had inadequate earning capacity to make the required monthly payments, the court awarded the home to Joseph.

After unsuccessfully moving for reconsideration, Patricia filed this appeal.

## II. DISCUSSION

### A. *Valuation of Retirement Benefits*

■ Patricia first contends that the trial court erred in selecting April 1988 as the functional termination date of the marriage

for the purpose of calculating the portion of Joseph's retirement benefits available for inclusion in the marital estate. Patricia argues that the date should properly have been July 1992, the date of trial, or at the very least, July 1990, when she and Joseph first expressly agreed to dissolve the marriage.

■ Although the date for valuation of marital property in a divorce ordinarily "should be as close as practicable to the date of trial," *Ogard v. Ogard*, 808 P.2d 815, 819 (Alaska 1991), the date for segregating marital from post-marital property is ordinarily the date of the functional termination of the marriage, that is, the date "when the marriage has terminated as a joint enterprise" or "when a married couple cease functioning economically as a single unit." *Schanck v. Schanck*, 717 P.2d 1, 3 & n. 7 (Alaska 1986), *see also Bays v. Bays*, 807 P.2d 482, 486 (Alaska 1991).

■ Determining the cutoff date for distinguishing marital from non-marital property is a matter for resolution by the trial court on a case-by-case basis; we have declined to treat the matter as an issue of law. *Schanck*, 717 P.2d at 3, *see also Bays*, 807 P.2d at 486; *Dixon v. Dixon*, 747 P.2d 1169, 1174–75 (Alaska 1987). We review the trial court's selection of the cutoff date for segregating marital and non-marital property under the abuse of discretion standard. *Bays*, 807 P.2d at 486.

In the present case, we find ample evidence in the record to support the trial court's conclusion that the Hanlons' marriage had terminated as a joint enterprise by April 1988.[3] The evidence indicates that, by that

**2.** The proceeds of the sale had been deposited into a joint savings account, from which the Hanlons evidently agreed to pay various joint debts totaling approximately $122,000. The balance was retained for distribution in the divorce proceedings, in accordance with the court's orders.

**3.** The evidence concerning the period between the initial separation of the parties in November 1986 and the commencement of the divorce action in March 1991 may be summarized as follows:

When Joseph moved out of the family home in November 1986, there was no immediate discus-

sion of dissolving the marriage. Joseph claimed that he mentioned the topic several months later, in April or May 1987. In June 1987 Patricia was diagnosed with breast cancer, which required surgery and follow-up treatment. During Patricia's illness, Joseph refrained from any further mention of ending the marriage, but he continued to live outside the family home.

By February or March 1988, Patricia had fully recovered, and she began working as a substitute teacher. According to Joseph, soon after that he renewed his earlier suggestion to dissolve the marriage. Joseph claimed that he gave Patricia paperwork to initiate dissolution proceedings on two occasions. He recalled that over the next

date, Joseph had done virtually everything in his power to separate himself physically from the marriage and to establish himself on an independent economic footing. The evidence further indicates that, although Joseph may have been discouraged from discussing termination of the marriage while Patricia underwent surgery and treatment for cancer in 1987 and early 1988, any uncertainty concerning the future of the marriage ended by the spring of 1988. By then, Patricia was working as a substitute teacher. According to Joseph, it was at this point that he began actively and unequivocally pursuing efforts to end the marriage.

Patricia points to her own testimony and testimony of her sister disputing Joseph's claim that he unequivocally communicated his desire to end the marriage in the spring of 1988. However, assessing witness credibility is a trial-court function, and the court in this case clearly acted within its discretion by crediting one version of events over another. *Parker v. Northern Mixing Co.*, 756 P.2d 881, 892 (Alaska 1988) ("it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence").

Patricia also insists that Joseph's continued provision of money for his family's living expenses and his payments of the mortgage on the family home demonstrate that the marriage continued to function as a joint economic enterprise after the spring of 1988. These actions, however, standing alone, seem indicative of little more than Joseph's recognition of his obligation to provide ongoing support for his family's separate financial needs and to pay the note on the house in accordance with his legal obligation to do so.

Considering the totality of the record, we conclude that the trial court did not abuse its discretion in determining April 1988 was an appropriate date for distinguishing marital property from post-marital property. Accordingly, in establishing the value of the Hanlons' marital property at the time of trial, the superior court properly relied on April 1988 as the cutoff date separating the marital and post-marital portions of Joseph's retirement benefits.

## III. SPOUSAL SUPPORT AND DIVISION OF PROPERTY

■ Patricia next contends that the trial court's award of spousal support was inadequate to meet her needs. She argues that if the court believed Joseph could not afford larger payments, it should have awarded her a greater share of the marital assets instead of dividing the assets equally.

■ In an action for divorce, the trial court is vested with broad discretion to award spousal support "as may be just and necessary." AS 25.24.160(a)(2). We will not set aside a spousal support award unless the trial court abuses its discretion. *Jones v. Jones*, 835 P.2d 1173, 1178 (Alaska 1992). The trial court is similarly vested with broad

two years he continued to discuss ending the marriage with Patricia, unsuccessfully attempting to resolve the issue without involving attorneys.

Patricia's recollection differed from Joseph's. Patricia acknowledged that Joseph dropped off dissolution paperwork on two occasions in 1988, but she said she was not there when he left the paperwork, and no discussion of ending the marriage occurred. Patricia claimed that she did nothing with the dissolution paperwork because she thought that, "if [Joseph] was gonna do something, he can do it[.]"

In any event, it appears that in July 1990, Patricia and Joseph tentatively agreed to dissolve the marriage. Later, however, they became involved in a dispute over the valuation of Joseph's retirement benefits. Patricia proposed to calculate the value of the benefits as of July 1990, the date of the tentative dissolution agreement; Joseph insisted that the value be determined as of November 1986, the date of separation. In March 1991, after discussion on this point reached an impasse, Joseph filed for divorce.

Between his initial separation in November 1986 and his commencement of the divorce action in March 1991, Joseph continued to reside in his own apartment but occasionally entered the family home to collect and pay household bills or to leave Patricia money for food and other daily expenses. Joseph also continued to make mortgage payments on the home and to deposit monies for the family into the joint checking account he maintained with Patricia. Patricia exercised sole control of this account; Joseph maintained a separate account from which he paid his own expenses. At some point, Joseph closed the family's credit card accounts or otherwise separated them, except for one joint Master Card that he left with Patricia for emergency use.

discretion to order that marital property be divided "in a just manner." AS 25.24.-160(a)(4). We will not reverse a trial court's decision allocating property unless the court abuses its discretion and the award is clearly unjust. *Jones*, 835 P.2d at 1175.

 Although the factors trial courts consider in determining whether to award spousal support are essentially identical to those considered in deciding the allocation of marital property, *Dixon*, 747 P.2d at 1173, spousal support and property-division serve distinct purposes and are not interchangeable. *See Lewis v. Lewis*, 785 P.2d 550, 553–54 (Alaska 1990). "We have announced a policy of encouraging trial courts to provide for parties' financial needs by property disposition, rather than by alimony." *Dixon*, 747 P.2d at 1173 (citations omitted), *see also Schanck*, 717 P.2d at 5. Permanent awards of spousal support are particularly disfavored, "because it is generally undesirable to require one person to support another on a long-term basis in the absence of an existing legal relationship." *Jones*, 835 P.2d at 1179.

In a limited number of situations, however, we have recognized that spousal support may properly be substituted for property division as a means of redressing inequalities in earning power. *See, e.g., Bays*, 807 P.2d at 485 (policy favoring property division over spousal support inapplicable to rehabilitative spousal support and other forms of short-term spousal support), *Dixon*, 747 P.2d at 1173 (policy inapplicable when marital assets fail to meet the needs of a divorcing spouse). Nevertheless, in such cases we have consistently emphasized that specific evidence must be presented to establish the need for spousal support and specific findings must be made reflecting the trial court's reasons for concluding that the amount of spousal support ordered was just and necessary. *Id.* at 1174. As we previously observed: "In the absence of specific findings concerning [the recipient's] financial needs, we are unable to evaluate whether ... alimony is just and necessary." *Jones*, 835 P.2d at 1179, *see also*

*Lewis*, 785 P.2d at 554 ("Without an explanation, this court cannot determine whether the trial court abused its discretion").

In the present case, the record indicates that the trial court found Patricia's earning power to be lower than Joseph's. Despite the availability of substantial marital assets, the court attempted to remedy the inequality not through property division but by ordering Joseph to make substantial and relatively long-term spousal support payments. Yet the court made no findings to explain its reasons for preferring spousal support over distribution of marital property, nor did it reveal the manner in which it determined the amount of spousal support it ordered Joseph to pay. Moreover, while the court's findings generally touched on many of the *Merrill* factors,[4] they did not expressly address the "circumstances and necessities" of the parties, *Merrill*, 368 P.2d at 547 n. 4, and failed to resolve the issues raised at trial concerning Patricia's earning capacity and her financial needs and expenses. *See Jones*, 835 P.2d at 1179. These omissions are especially troubling because sharply conflicting evidence was presented at trial on the extent to which Patricia's earning capacity was impaired by her medical condition.

To permit meaningful appellate review, the trial court must provide "sufficiently detailed and explicit findings 'to give [this] court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" *Lang v. Lang*, 741 P.2d 1193, 1195 (Alaska 1987) (quoting *Merrill*, 368 P.2d at 548). Because the trial court did not explain its reasons for preferring spousal support over property distribution, failed to disclose the basis for the amount of spousal support it awarded, and made no specific findings determining the earning power and financial needs of the parties, it is not possible for us to determine whether the court abused its discretion in this case. Accordingly, we must remand this case for additional findings on these issues.[5]

4. *See Merrill v. Merrill*, 368 P.2d 546, 547 n. 4 (Alaska 1962).

5. In connection with her argument concerning the reasonableness of the spousal support and

property division, Patricia contends that the trial court erred in awarding Joseph the entirety of his accrued leave. The original findings entered by the trial court did not address Joseph's ac-

## IV. AWARD OF MARITAL RESIDENCE

Patricia argues, lastly, that the trial court erred in awarding the family home to Joseph and in failing to provide for her continued residence there. As we have previously noted, the trial court is vested with broad discretion in allocating marital assets. *See* AS 25.24.160(a)(4). Here, the parties agreed that the family home had no equitable value and would require a substantial amount to repair the house to make it salable. The trial court awarded the home to Joseph, reasoning that Patricia lacked "adequate earning power to maintain the home." This decision is supported by the record and does not amount to an abuse of discretion.

Patricia nevertheless objects to the trial court's failure to provide her with the right to remain in the home temporarily, until Michelle graduates from high school. Patricia points out that AS 25.24.160(a)(4)(F) requires the court to consider "the desirability of awarding the family home, *or the right to live in it for a reasonable period of time* to the party who has primary physical custody of children."

Patricia had primary custody of Michelle. The trial court expressly considered "the desirability of awarding the family home to" Patricia and found good reason not to do so. However, the court made no mention of the second portion of the statutory provision, which required it to consider the desirability of awarding Patricia, as Michelle's custodian, "the right to live in [the family home] for a reasonable period of time."

At trial, Patricia testified that she "would like to be able to live in the house for two more years 'til [sic] Michelle graduates from high school." The record sheds no light on the court's reasons for failing to allow Patricia to remain in the family home as requested. In light of the clear statutory directive requiring the trial court to consider the desirability of Patricia's continued residence in the family home for a reasonable period, the court should specifically address this issue on remand.

## V. CONCLUSION

In summary, we affirm the trial court's determination of the date for distinguishing between marital and post-marital property. We remand for additional findings on the remaining issues presented. In order to expedite the ultimate resolution of the case, we retain jurisdiction and direct the trial court to submit its additional findings to this court within forty-five days of the date of this opinion.[6]

AFFIRMED in part and REMANDED in part for supplemental findings in conformity with this opinion.

---

crued leave. In response to a motion for reconsideration by Patricia, however, the trial court commented: "It was the court's understanding that [Patricia] intended [Joseph] to receive his annual leave and this court should consider the value of it in looking at the whole picture in dividing the marital estate. This is what the court did." Since the court's comment does not specify the manner in which it made the adjustment, the court should specifically address this issue on remand, as well.

**6.** The trial court is authorized to reconsider and modify its original decision to the extent it deems such action necessary and appropriate on remand. Once the trial court submits its supplemental findings to this court, the parties will be allowed to file additional briefs addressing those findings. The additional briefs of both parties shall be due simultaneously within twenty days of the date the trial court distributes its supplemental findings. The additional briefs may be filed in memorandum form and need not comply with the formal requirements of Appellate Rule 212. No further oral argument shall be heard unless otherwise ordered by this court.